Filed 10/20/20  P. v. Quintana CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B302517 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA098952) |
| v. | |
| GEORGE ANGEL QUINTANA, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Steven D. Blades, Judge.  Affirmed.

Jonathan E. Demson, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Charles S. Lee and Chung L. Mar, Deputy Attorney Generals for Plaintiff and Respondent.

————————

George Angel Quintana appeals from a postjudgment order summarily denying his petition for resentencing under Penal Code section 1170.95[1] as to his prior conviction of voluntary manslaughter.  Because section 1170.95 does not provide relief for individuals convicted of voluntary manslaughter, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Killing*

Quintana and Corey Antonio Gardner were members of the Eastside Bolen Park gang.[2]  On the night of January 29, 2011 Gardner and Quintana were drinking beer at the home of Andrew Aguilar.  Aguilar was the former boyfriend of Gardner's cousin, Athena Scott.  At some point early the next morning, Aguilar called Robert Pichardo (Robert) to ask whether he wanted to hang out.  Robert told him not to come over to the house because Scott was there with her new boyfriend, Diego Sparling.  Sparling was a member of a rival gang known as the Northside Bolen Park gang.  Despite Robert's warning, Aguilar, Quintana, and Gardner drove over to the house.

Upon arriving at the house, Quintana, Aguilar, and Gardner looked in Sparling's direction, yelled "Eastside Bolen," "rushed" Sparling, and began hitting him.  Robert's brother Rene Pichardo (Pichardo) became involved in the fight.  During the fight Pichardo was stabbed three times in the right chest and

---

[1]    Unless otherwise stated, all statutory references are to this code.

[2]    The summary of facts is drawn from our prior opinion in *People v. Quintana* (May 2, 2017, B248542) [nonpub. opn.] (*Quintana I*).

three times on his side.  Five of the wounds were potentially fatal, and Rene died 11 days later from his injuries.

B.    *Quintana's Conviction of Second Degree Murder, Our Reversal, and His Plea to Voluntary Manslaughter*

A jury found Quintana not guilty of assault by means of force likely to produce great bodily injury, but it was unable to reach a verdict as to the murder count.  In a second trial the jury found Quintana guilty of second degree murder (§ 187, subd. (a)) and found true the allegation the crime was committed for the benefit of a criminal street gang (§ 186.22, subd. (b)).  The trial court sentenced Quintana to 15 years to life in prison.

In *Quintana I* we reversed.  During jury deliberations, the jurors asked the trial court to "[f]urther explain Natural & Probably [*sic*] Cause."  The trial court instructed the jury that it should consider whether "a perpetrator or someone who aided and abetted the perpetrator commit the simple assault, and did the simple assault get out of hand, did it escalate to the crime of murder, and was it foreseeable that that could have happened.  And again, you have to decide what the facts are of that particular case."  We concluded this instruction was erroneous and required reversal because it "omitted the requirement that the consequence must have been reasonably foreseeable, and likely to have happened, and not merely possible." (*Ibid.*)  We explained, "Error in instructing the jury as to the elements of the natural and probable consequences doctrine is reviewed under the *Chapman* harmless beyond a reasonable doubt standard. . . . Here, we cannot conclude that the error was harmless beyond a reasonable doubt.  [¶]  This was clearly a close case. . . .  That the jury was deadlocked as to both defendants, received the

3

additional instructions, and was able to reach its verdicts shortly thereafter suggests that those verdicts were based on the erroneous instructions. [Citation.] Moreover, the evidence was extremely conflicted in this case, with no eyewitness to the stabbing or retrieval of the murder weapon, disputed testimony as to whether Pichardo at some point had the upper hand in the struggle, and uncontroverted evidence that both defendants were stabbed by an unknown person. Therefore, instructing the jury in this case that a natural and probable consequence was one that could have happened was not harmless beyond a reasonable doubt."

On remand, Quintana pleaded no contest to one count of voluntary manslaughter (§ 192, subd. (a)), and the trial court sentenced him to 11 years in prison with 2,990 days of credit.

C.  *Quintana's Motion for Resentencing*

On July 24, 2019 Quintana, representing himself, filed a petition/declaration in superior court to vacate his conviction and be resentenced in accordance with recent statutory changes relating to accomplice liability for murder. Quintana declared, "A plea to the lesser charge of Voluntary Manslaughter was taken before the Honorable Judge Robert Martinez in 2017. Petitioner was not alleged or charged as the actual killer. I pled no contest to voluntary manslaughter in lieu of going to trial because I believed I might be convicted of 1st or 2nd degree murder at trial based on the natural and probable consequences doctrine. [¶] The facts were that the deceased was assaulted by multiple assailants during a gathering. During two trials the People proceeded on the theory of natural and probable consequences. [¶] Petitioner/Defendant contends that he could not as of

4

January 1, 2019 be convicted of first or second degree murder not attempt [*sic*] murder due to the enactment of changes to Penal Code [section] 188 and the enactment of Penal Code section 1170.95." The People filed an opposition in which they argued Quintana was ineligible for relief because section 1170.95 was unconstitutional and does not apply to convictions of manslaughter or other crimes other than murder.

On November 8, 2019 the trial court summarily denied the petition for resentencing, explaining, "The [c]ourt finds it unnecessary to appoint counsel for Petitioner or permit a reply because it has found, in several other cases, that [section] 1170.95 is unconstitutional. In addition, even if the statute was constitutional, Petitioner pled to the charge of manslaughter, not murder. Therefore, he does not qualify for relief under the statute." Quintana timely appealed.

## DISCUSSION

A.      *Senate Bill No. 1437*

On September 30, 2018 Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437) was signed into law, effective January 1, 2019. Senate Bill 1437 was enacted to "amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Sen. Bill 1437 (2017-2018 Reg. Sess.) § 1; see *People v. Verdugo* (2020) 44 Cal.App.5th 320, 325 (*Verdugo*), review

granted Mar. 18, 2020, S260493; *People v. Martinez* (2019) 31 Cal.App.5th 719, 723 (*Martinez*).)

New section 188, subdivision (a)(3), provides, "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." Senate Bill 1437 also added section 189, subdivision (e), which provides, "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."

Senate Bill 1437 also provides a procedure in new section 1170.95 for an individual convicted of felony murder or murder under a natural and probable consequences theory to petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if he or she could not have been convicted of murder under Senate Bill 1437's changes to sections 188 and 189. (Sen. Bill 1437 (2017-2018 Reg. Sess.) § 4.) Section 1170.95, subdivision (b)(1), provides that the petition "shall be filed with the court that sentenced the petitioner."[3] The petition must

---

[3] Judge Robert R. Martinez, who was the sentencing judge, retired in 2018.

include a declaration by the petitioner stating he or she is eligible for relief under the section, providing the superior court case number and year of the conviction, and indicating whether he or she requests the appointment of counsel.  (§ 1170.95, subd. (b)(1).)

The Legislature intended for there to be a three-step evaluation of a section 1170.95 petition.  (*Verdugo, supra*, 44 Cal.App.5th at pp. 328, 332-333.)  As we explained in *Verdugo*, "If any of the required information is missing and cannot be readily ascertained by the court, 'the court may deny the petition without prejudice to the filing of another petition and advise the petitioner that the matter cannot be considered without the missing information.'  (§ 1170.95, subd. (b)(2).)  [¶]  If the petition contains all required information, section 1170.95, subdivision (c), prescribes a two-step process for the court to determine if an order to show cause should issue:  'The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section.  If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner.  The prosecutor shall file and serve a response . . . and the petitioner may file and serve a reply . . . .  If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause.'"  (*Verdugo*, at p. 327.)

After issuing an order to show cause, the trial court must hold a hearing "to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts . . . ."  (§ 1170.95, subd. (d)(1).)  If a hearing is held, "[t]he prosecutor and the petitioner may rely on the record of conviction or offer new or

7

additional evidence to meet their respective burdens." (§ 1170.95, subd. (d)(3); see *People v. Lewis* (2020) 43 Cal.App.5th 1128, review granted Mar. 18, 2020, S260598.)[4]  The prosecution has the burden of proving beyond a reasonable doubt that the petitioner is ineligible for resentencing.  (§ 1170.95, subd. (d)(3).)

B.     *Senate Bill 1437 Is Constitutional*

The trial court found Senate Bill 1437 was unconstitutional because it impermissibly amended Proposition 7 and Proposition 115, and violated article 1, section 28, subdivision (a)(6), and article 1, section 29 of the California Constitution.  Quintana contends, the People concede, and we agree the trial court's ruling was in error.  All appellate courts that have considered this issue have rejected the claim Senate Bill 1437 is unconstitutional.  (See, e.g., *People v. Lippert* (2020) 53 Cal.App.5th 304, 313-314 ["[W]e reject the People's arguments and conclude that Senate Bill No. 1437 is constitutional"]; *People v. Nash* (2020) 52 Cal.App.5th 1041, 1053 ["[W]e conclude the trial court erred in finding that Senate Bill No. 1437 unconstitutionally amends Proposition 7.  We also reject respondent's claims that Senate Bill 1437 unconstitutionally amends Proposition 115 and Proposition 9 and that it violates the

---

[4]     The Supreme Court in *People v. Lewis* limited briefing and argument to the following issues:  "(1) May superior courts consider the record of conviction in determining whether a defendant has made a prima facie showing of eligibility for relief under Penal Code section 1170.95?  (2) When does the right to appointed counsel arise under Penal Code section 1170.95, subdivision (c)[?]"  (Supreme Ct. Minutes, Mar. 18, 2020, p. 364; *People v. Lewis, supra*, 43 Cal.App.5th 1128.)

8

separation of powers doctrine."]; *People v. Superior Court* (*Ferraro*) (2020) 51 Cal.App.5th 896, 902 ["We join the other appellate courts who have addressed the issue in concluding that Senate Bill 1437 is not an invalid amendment of either Proposition 7 or 115 because the legislation did not add to or take away from any provision in either initiative."]; *People v. Alaybue* (2020) 51 Cal.App.5th 207, 211 ["We conclude that Senate Bill 1437 is constitutional, as it does not amend Propositions 7 and 115 and it does not violate the separation of powers doctrine"].) We agree with the reasoning in these cases and conclude Senate Bill 1437 is constitutional.

C.     *Section 1170.95 Does Not Apply to Voluntary Manslaughter Convictions*

Quintana contends section 1170.95, subdivision (a)(2), by providing a defendant seeking resentencing pursuant to Penal Code section 1170.95 must have been "convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of trial at which the petitioner could be convicted of first degree or second degree murder" (§ 1170.95, subd. (a)(2)), necessarily applies to defendants who accept a plea offer of voluntary manslaughter in lieu of going to trial where the defendant could have been convicted of murder.  Quintana's contention is contrary to the plain language of the statute and its legislative history.

"Our primary task 'in interpreting a statute is to determine the Legislature's intent, giving effect to the law's purpose. [Citation.]  We consider first the words of a statute, as the most reliable indicator of legislative intent.'" (*California Building Industry Assn. v. State Water Resources Control Bd.* (2018)

9

4 Cal.5th 1032, 1041; accord, *In re A.N.* (2020) 9 Cal.5th 343, 351-352.) "'"We interpret relevant terms in light of their ordinary meaning, while also taking account of any related provisions and the overall structure of the statutory scheme to determine what interpretation best advances the Legislature's underlying purpose."' [Citation.] 'If we find the statutory language ambiguous or subject to more than one interpretation, we may look to extrinsic aids, including legislative history or purpose to inform our views.'" (*In re A.N.*, at pp. 351-352; accord, *ZB, N.A. v. Superior Court* (2019) 8 Cal.5th 175, 189 ["We consider the provisions' language in its 'broader statutory context' and, where possible, harmonize that language with related provisions by interpreting them in a consistent fashion. [Citation.] If an ambiguity remains after this preliminary textual analysis, we may consider extrinsic sources such as legislative history and contemporaneous administrative construction."].)

Nowhere in section 1170.95 is the crime of voluntary manslaughter mentioned, and subdivision (a) provides a remedy only for "[a] person convicted of felony murder or murder." As the Court of Appeal observed in *People v. Cervantes* (2020) 44 Cal.App.5th 884, 887 (*Cervantes*), in concluding section 1170.95 does not provide relief for convictions of voluntary manslaughter where a defendant charged with murder enters a no contest plea to voluntary manslaughter, "[H]ere the language of the statute unequivocally applies to murder convictions. There is no reference to the crime of voluntary manslaughter. To be eligible to file a petition under section 1170.95, a defendant must have a first or second degree murder conviction. The plain language of the statute is explicit; its scope is limited to murder convictions." (Accord, *People v. Paige* (2020)

51 Cal.App.5th 194, 204 (*Paige*) ["[W]e agree with our colleagues in the Second, Fourth and Fifth Districts holding that defendants charged with felony murder but convicted of voluntary manslaughter pursuant to a plea agreement are not eligible for relief under section 1170.95."]; *People v. Sanchez* (2020) 48 Cal.App.5th 914, 918 (*Sanchez*) ["By its plain language, section 1170.95 thus makes resentencing relief available only to qualifying persons convicted of murder."]; *People v. Turner* (2020) 45 Cal.App.5th 428, 435-436 (*Turner*) ["Relying on the clear language of the statute, courts including ours have concluded that section 1170.95 is unambiguous and does not provide relief to persons convicted of manslaughter."]; *People v. Flores* (2020) 44 Cal.App.5th 985, 993 ["Section 1170.95 does not mention, and thus does not provide relief to, persons convicted of manslaughter, which, 'while a lesser included offense of murder, is clearly a separate offense . . . .'"].)

Quintana's argument, the reference in section 1170.95, subdivision (a)(2), to the defendant's acceptance of "a plea offer in lieu of trial at which the petitioner could be convicted of first degree or second degree murder" means a defendant is eligible for relief if he or she accepted a plea offer for voluntary manslaughter in lieu of murder, is contrary to the plain language of section 1170.95, subdivision (a). As the Court of Appeal in *Paige, supra*, 51 Cal.App.5th at page 202 explained, "[R]ead in the context of the statute as a whole, considering both its structure and its language, subdivision (a)(2) cannot reasonably be understood to encompass persons who accept a plea offer in lieu of trial for a crime other than murder. The first paragraph of section 1170.95, subdivision (a) sets forth the basic 'who' and 'what' of the statute—who may seek relief and what they may

11

seek.  The 'who' is '[a] person *convicted of felony murder or murder under a natural and probable consequences theory*' and the 'what' is the opportunity to 'file a petition with the court . . . *to have the petitioner's murder conviction vacated.*'  (Italics added.)  The provision on which [defendant] relies, section 1170.95, subdivision (a)(2), is one of three conditions—*all* of which must *also* apply before the person convicted of felony murder or natural and probable consequences murder may seek relief under section 1170.95.  Given the structure of the statute and the language in the first paragraph of section 1170.95, subdivision (a), the reference to a person who 'accepted a plea offer' in subdivision (a)(2) must necessarily mean a person who accepted a plea to, and was convicted of, first or second degree murder in lieu of a trial at which he could have been convicted of either of those charges."  (Accord, *Sanchez, supra*, 48 Cal.App.5th at pp. 918-919; *Turner, supra*, 45 Cal.App.5th at p. 438.)

Further, contrary to Quintana's argument, section 1170.95, subdivision (a)(2)'s reference to a defendant's acceptance of a plea is not rendered superfluous under our construction of section 1170.95 to apply only to murder convictions.  "Specifying that section 1170.95 applies to murder convictions both by trial and by guilty plea clarifies that it does not matter how the murder conviction was obtained for section 1170.95 to apply.  Regardless of whether that clarification was necessary, "'the Legislature may choose to state all applicable legal principles in a statute rather than leave some to even a predictable judicial decision.'"  [Citation.]  Express statutory language defining the class of defendants to whom section 1170.95 applies is not surplusage."  Had the legislature intended to include voluntary manslaughter within the scope of section 1170.95, it could have chosen to do so;

12

we do not add language to an unambiguous statute.  (*Sanchez, supra*, 48 Cal.App.5th at p. 919.)

The legislative history of section 1170.95 supports this construction of the statute.  "First, the Legislature understood the distinction between murder and manslaughter and focused its efforts on revising accomplice liability under a felony murder or natural and probable consequences theory.  Second, nearly every committee report and analyses made note of the life sentences imposed for defendants convicted of first- or second-degree murder.  One report based cost estimates on the number of inmates serving terms for first- or second-degree murder.  Finally, the petitioning procedure was restricted by amendment to apply to persons convicted of felony murder or murder under a natural and probable consequences theory.  Viewed together, the legislative history confirms that a defendant who faces murder liability under the natural and probable consequences doctrine, but pleads guilty to manslaughter in lieu of trial, is not eligible for resentencing under section 1170.95."  (*Turner, supra,* 45 Cal.App.5th at p. 438; accord, *Paige, supra*, 51 Cal.App.5th at p. 203.)

The fact a defendant who is convicted of murder may be eligible to obtain relief under section 1170.95, but a defendant who pleaded guilty of voluntary manslaughter instead of facing a murder charge cannot, does not lead to an absurd result, as argued by Quintana. We agree with the analysis of the court in *Turner, supra*, 45 Cal.App.5th at page 439, "The punishment for manslaughter is already less than that imposed for first- or second-degree murder, and the determinate sentencing ranges of 3, 6, or 11 years for voluntary manslaughter and 2, 3, or 4 years for involuntary manslaughter permit a sentencing judge to make

13

punishment commensurate with a defendant's culpability based on aggravating and mitigating factors. [Citations.] Providing relief solely to defendants convicted of *murder* under a felony-murder or natural-and-probable consequences theory does not conflict with the Legislature's stated objective to make 'statutory changes to more equitably sentence offenders in accordance with their involvement in homicides.'" (Accord, *Paige, supra*, 51 Cal.App.5th at p. 204.)

Quintana's reliance on *In re R.G.* (2019) 35 Cal.App.5th 141 and *People v. Page* (2017) 3 Cal.5th 1175 (*Page*) is misplaced. In *In re R.G.*, the same court that decided *Cervantes* concluded section 1170.95's petitioning procedures apply to juvenile offenders, even though Senate Bill 1437 uses terminology used in adult criminal proceedings and the statute does not reference juvenile offenders. (*In re R.G.*, at pp. 144, 146-147.) However, the court's holding was based on its analysis of juvenile law, including that Senate Bill 1437's amendment to section 188 to limit reliance on the natural and probable consequences doctrine applies to juvenile offenders pursuant to Welfare and Institutions Code section 602. (*In re R.G.*, at pp. 148-151; see *People v. Munoz* (2019) 39 Cal.App.5th 738, 756, fn. 19 [The holding in *In re R.G.* "was premised on several considerations specific to the juvenile law, including, inter alia, that provisions of the Welfare and Institutions Code specifically contemplate incorporating substantive criminal laws into juvenile proceedings, and excluding juveniles from . . . section 1170.95's reach could run afoul of the requirement that a juvenile may not be held in physical confinement for a period exceeding that which could be imposed upon an adult convicted of the same offense"].)

14

In *Page, supra*, 3 Cal.5th at page 1180 the Supreme Court held a defendant who is convicted of unlawfully driving or taking a vehicle (§ 10851) may be eligible for resentencing under Proposition 47, the Safe Neighborhoods and Schools Act of 2014 (§ 1170.18), if the defendant was convicted of the offense based on his or her theft of the vehicle, which would qualify as theft of property under section 490.2 if the vehicle was worth $950 or less. The *Page* court's analysis was based on the language of Proposition 47, the voters' instructions, and the proposition's legislative history. (*Page*, at pp 1183-1187.) Neither *R.G.* nor *Page* addressed whether section 1170.95 applies to convictions for manslaughter.

D.     *Section 1170.95 Does Not Violate the Equal Protection Clause*

Quintana contends section 1170.95 violates the Equal Protection Clause because it treats defendants convicted of voluntary manslaughter pursuant to a plea differently from those convicted of murder. We agree with the Courts of Appeal that have rejected an equal protection challenge on this basis. (See *Sanchez, supra*, 48 Cal.App.5th at p. 920; *Paige, supra*, 51 Cal.App.5th at p. 206; *Cervantes*, *supra*, 44 Cal.App.5th at p. 888.)

"The concept of equal treatment under the laws means that persons similarly situated regarding the legitimate purpose of the law should receive like treatment. [Citation.] '"The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner." [Citation.] This initial inquiry is not whether persons

15

are similarly situated for all purposes, but "whether they are similarly situated for purposes of the law challenged.""" (*People v. Morales* (2016) 63 Cal.4th 399, 408; accord, *Cooley v. Superior Court* (2002) 29 Cal.4th 228, 253; *People v. Lopez* (2019) 38 Cal.App.5th 1087, 1111, review granted, Nov. 13, 2019, S258175 [rejecting equal protection challenge to Senate Bill 1437 based on its exclusion of defendants convicted of attempted murder from its provisions for relief].)

Although Quintana contends those convicted of voluntary manslaughter and murder are similarly situated, it is axiomatic that "'offenders who commit different crimes are not similarly situated for equal protection purposes.'" (*Cervantes, supra*, 44 Cal.App.5th at p. 888; accord, *Paige, supra*, 51 Cal.App.5th at p. 206; *Sanchez, supra*, 48 Cal.App.5th at p. 920.) Because Quintana was "'convicted of voluntary manslaughter, a different crime from murder, which carries a different punishment,'" he "'has failed to establish the threshold requirement of an equal protection claim: disparate treatment of similarly situated persons.'" (*Sanchez*, at p. 920; accord, *Paige*, at p. 205; *Cervantes*, at p. 888.)

Even if those convicted of manslaughter and murder were similarly situated for purposes of section 1170.95, we agree with the reasoning of the courts in *Paige, supra*, 51 Cal.App.5th at page 205, *Sanchez, supra*, 48 Cal.App.5th at page 921, and *Cervantes, supra*, 44 Cal.App.5th at page 888 that an equal protection challenge still fails. "[I]f the classification does not involve a suspect class, legislation is presumed to be valid under the equal protection clause if the statutory classification is rationally related to a legitimate state interest." (*People v. Mora* (2013) 214 Cal.App.4th 1477, 1483; see *Paige,* at p. 205 [applying

16

rational basis review in deciding equal protection challenge]; *Sanchez*, at p. 921 [same]; *Cervantes*, at p. 888 [same]; *People v. Lopez, supra*, 38 Cal.App.5th at p. 1111 ["We . . . apply rational basis review to determine whether the Legislature's limitation of the ameliorative provisions of Senate Bill 1437 was justified."].)

As the *Sanchez* court explained, "the Legislature could have reasonably concluded 'that the punishment for voluntary manslaughter was appropriate, but the punishment for murder based on the [natural and probable consequences theory] could be excessive and reform was needed only there.' [Citation.] "'The Legislature is responsible for determining which class of crimes deserves certain punishments and which crimes should be distinguished from others. As long as the Legislature acts rationally, such determinations should not be disturbed.'" [Citation.] [¶] We reject [defendant's] assertion that the distinction was not reasonable in light of the Legislature's intent to save money on the costs of incarceration. Whether expanding section 1170.95 to include those who pled guilty to voluntary manslaughter would result in more savings is irrelevant. That is exactly the type of fiscal line-drawing and policymaking decision that the Legislature is free to make. [Citation.] It does not demonstrate that it was irrational to distinguish between those convicted of murder by plea and those convicted of voluntary manslaughter by plea." (*Sanchez, supra*, 48 Cal.App.5th at p. 921; accord, *Paige, supra*, 51 Cal.App.5th at p. 206; *Cervantes, supra*, 44 Cal.App.5th at pp. 888-889.)[5]

---

[5]     We likewise reject Quintana's argument he was denied substantive due process. "'[S]ubstantive due process requires a rational relationship between the objectives of a legislative

17

E.   *The Trial Court Did Not Err in Failing To Appoint Counsel Before Denying Quintana's Petition for Resentencing*

Quintana contends the trial court erred when it summarily denied his petition for resentencing without first appointing counsel because he made a prima facie showing he falls within the provisions of section 1170.95.  Because section 1170.95 does not provide relief for defendants convicted of voluntary manslaughter, the court did not err.

As we explained in *Verdugo* with respect to the trial court's first prima facie review under section 1170.95, subdivision (c), "because a petitioner is not eligible for relief under section 1170.95 unless he or she was convicted of first or second degree murder based on a charging document that permitted the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine (§ 1170.95, subd. (a)(1), (2)), the court must at least examine the complaint, information or indictment filed against the petitioner; the verdict form or factual basis documentation for a negotiated plea; and the abstract of judgment.  Based on a threshold review of these documents, the court can dismiss any petition filed by an individual who was not actually convicted of first or second degree murder." (*Verdugo, supra*, 44 Cal.App.5th at pp. 329-330; accord, *People v. Cornelius* (2020) 44 Cal.App.5th 54, 58, review

---

enactment and the methods chosen to achieve those objectives.' [Citation.]  Here there was such a relationship.  The legislative goal was to eliminate the sentencing disparity caused by the felony murder rule [and natural and probable consequences doctrine].  That goal was properly achieved by the section 1170.95 petition procedure to vacate those murder convictions." (*Cervantes, supra*, 44 Cal.App.5th at p. 889.)

granted Mar. 18, 2020, S260410 ["Cornelius contends the trial court was statutorily required to appoint counsel pursuant to section 1170.95, subdivision (c), once he alleged that he satisfied the filing requirements for the petition, regardless of whether the allegations are accurate.  We reject his contention where, as here, he is indisputably ineligible for relief"]; *People v. Lewis*, *supra*, 43 Cal.App.5th at pp. 1139-1140 ["Given the overall structure of the statute, we construe the requirement to appoint counsel as arising in accordance with the sequence of actions described in section 1170.95 subdivision (c); that is, after the court determines that the petitioner has made a prima facie showing that petitioner 'falls within the provisions' of the statute, and before the submission of written briefs and the court's determination whether petitioner has made 'a prima facie showing that he or she is entitled to relief'"]; but see *People v. Cooper* (2020) 54 Cal.App.5th 106, 118-119 [once the trial court determines the petition contains the required information, the court performs a single prima facie review, and if the defendant makes a prima facie showing of entitlement to relief, the court issues an order to show cause].)

As discussed, because Quintana was not convicted of murder, he does not fall within the provisions of section 1170.95. Quintana therefore did not make the first prima facie showing under section 1170.95, subdivision (c), and the trial court properly denied his petition without first appointing counsel.

## DISPOSITION

The order denying Quintana's petition for resentencing under section 1170.95 is affirmed.


FEUER, J.


We concur:


PERLUSS, P. J.


SEGAL, J.